THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: _____

DEPUTY CLERK

APR - 5 2000



FILED
CLERK, U.S. DISTRICT COURT

MAR 3 0 2000

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

APR - 5 2000

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN INITIATIVE MEDIA WORLDWIDE, INC., a California corporation, | CASE NO. CV 99-8662 MMM (JWJx) |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER ACTION |
| vs. | |
| ARTHUR A. NORTHEN, | |
| Defendant. | |

☑ Docketed
☑ Copies / NTC Sent
___ JS - 5 / JS - 6
___ JS - 2 / JS - 3
___ CLSD

This action concerns an agreement between plaintiff Western Initiative Media Worldwide, Inc. and B&N Company, Inc. Pursuant to the agreement, Western guaranteed that B&N would receive at least $20 million in gross revenue during the first year of the contract as a result of Western's promotion, marketing, and sale of B&N's product. Six months later, B&N sued Western in the Northern District of Georgia, seeking damages for breach of contract. Western counterclaimed, asserting causes of action for fraud, negligent misrepresentation, and violation of the California Franchise Investment Law ("FIL"). The district court entered judgment in B&N's favor on the FIL claim, and Western then added Arthur Northen, B&N's president, chief executive officer and chief operating officer, as a counterclaim defendant. Eighteen months after the Georgia action was filed, Western brought suit against Northen in this court, asserting a claim

27

1  for violation of the FIL.

2      Northen has now moved to dismiss or transfer this action pursuant to the 28 U.S.C.

3  § 1404(a) and the doctrine of federal comity.  Because the Georgia suit was filed first and involves

4  the same parties and claims as does this case, the court grants defendant's motion.  Given the

5  particular facts of this case, the court concludes that dismissal is more appropriate than transfer,

6  since the district court in Georgia has already ruled on the merits of Western's FIL claim.[1]

7

8                            I. FACTUAL BACKGROUND

9      Defendant Arthur Northen is the president, chief executive officer and chief operating

10 officer of B&N, a Georgia corporation.[2]  In April 1997, Bryan Beaty, a Western employee,

11 allegedly negotiated a franchise sales agreement (the "Agreement") with Northen, who acted on

12 B&N's behalf.[3]  Under the Agreement, Western was required to promote, market and sell

13 certificates that could be redeemed for free computer software and to pay B&N $3.50 for every

14 unit redeemed.[4]  Western and B&N were to split earned promotion fees equally, and Western was

15 to receive 25% of the revenue generated by customers it identified who purchased certificates

16 through B&N's mail order catalog.[5]  Western guaranteed that B&N would receive at least $20

17 million in gross revenue during the first year of the agreement, and agreed to purchase certificates

18 at a unit price of $3.50 to satisfy any shortfall.[6]

19  _____

20      [1]While Western asserted the FIL claim in the Georgia action against B&N rather than
    against Northen, the identity of the defendant sued would have no impact upon the basis for
21  dismissal of the claim the district court articulated.

22      [2]Complaint, ¶ 4.

23      [3]Id., ¶ 5.

24
        [4]Id.  The certificates were apparently distributed to consumers by advertisers as value-
25  added incentives.  See  Plaintiff's Memorandum of Points and Authorities in Opposition to Motion
    to Dismiss, or in the Alternative, to Transfer ("Pl.'s Opp.") at 3:17-19.
26

27      [5]Id.

28      [6]Id., ¶ 5.

                                    2

1   After six months, Western allegedly repudiated the Agreement.  On February 3, 1998,

2   B&N filed an action for breach of contract in the United States District Court for the Northern

3   District of Georgia ("the Georgia action").[7]  Western asserted counterclaims for fraud, negligent

4   misrepresentation, and violation of the California Franchise Investment Law (California

5   Corporations Code §§ 31000 et seq.).[8]  Western's counterclaim alleged that B&N, through its

6   representatives, Northen and Mark Schott, knowingly and negligently made false representations

7   to Beaty to induce Western to enter into the Agreement.[9]  The alleged misrepresentations included

8   statements that B&N had already sold 50 to 60 million certificates, that it took six to eight weeks

9   to process redeemed certificates, that B&N had exclusive marketing rights to the various software

10  and CD ROM titles offered through the certificates, that B&N had already secured major accounts

11  such as Chase Manhattan Bank and Coca-Cola, that 5% of those who redeemed the promotional

12  certificates thereafter ordered product, and that 57% of those customers reordered.[10]  Western's

13  FIL claim alleged that B&N had willfully failed to register the Agreement with the California

14  Department of Corporation.[11]

15       In February 1998, Western filed a motion to transfer the Georgia action to the Central

16  District of California pursuant to 28 U.S.C. § 1404(a).  On March 27, 1998, the district court

17  denied the motion, stating that transfer would merely shift the burden of inconvenience from

18  Western to B&N.  The court noted that there were no other actions pending that involved the same

19  subject matter, and no showing that one jurisdiction's courts were more congested than the other.

20  _____

21       [7]Declaration of Robert E. Shields in Support of Defendant's Motion to Dismiss or Transfer
22  ("Shields Decl."), ¶ 1, Ex. B at 2.  While defendant has not submitted a copy of the Georgia
    complaint confirming that the action was filed on February 3, 1998, it is clear that suit was
23  instituted prior to March 27, 1998, the date on which the district court entered an order denying
    Western's motion to transfer.  (See id., Ex. E.)
24
25       [8]Id., ¶ 2, Ex. A at 5-9.

26       [9]Id., Ex. A at 5-8.

27       [10]Id., Ex. A at 6.

28       [11]Id., Ex. A at 8-9.

3

The court stressed the choice of law provision in the Agreement, which specified that Georgia law would govern the contract's validity, effect, construction and enforcement. For all these reasons, it held that Western had not met its burden of showing that the balance of convenience and the interests of justice favored transfer.[12]

After the motion to transfer was denied, B&N moved for judgment on Western's FIL claim. On October 19, 1998, the district court granted the motion on the basis that the California law did not govern the transaction between Western and B&N because of the choice of law provision in the Agreement.[13] The court also concluded that the FIL did not invalidate the choice of law clause or render it unenforceable.[14]

After this order was entered, Western sought leave to amend its counterclaim to add Northen as a counterclaim defendant.[15] Before the court could act on this motion, the litigation was stayed due to B&N's filing of a bankruptcy petition. The stay was subsequently lifted, and the court granted Western's motion for leave to amend on October 15, 1999.[16] The amended counterclaim pleads the causes of action for fraud and negligent misrepresentation found in the original counterclaim against both B&N and Northen and deletes the claim based on the FIL.[17]

On August 26, 1999, while the action in Georgia was stayed, Western commenced this suit against Northen, asserting a claim for violation of the FIL. With the exception of the party sued, the claim is identical in all respects to that which the district court in Georgia dismissed.[18] It concerns the same agreement, and alleges the same misrepresentations as did the FIL claim

---

[12]*Id.*, Ex. E. at 2-3.

[13]*Id.*, Ex. B at 1, 3.

[14]*Id.*, Ex. B at 5.

[15]*Id.*, Ex. C.

[16]*Id.*, ¶ 5, Ex. D.

[17]*Id.*, Ex. C at 8-14.

[18]Complaint at 1.

1   pleaded against B&N in Georgia.  It also pleads in identical fashion that failure to register the
2   Agreement with the California Department of Corporations was a violation of the California
3   Franchise Investment law.[19]

4

5                                    **II.  DISCUSSION**

6   **A.      The Federal Comity Doctrine**

7          Under the doctrine of "federal comity," or the "first-to-file rule," a district court may
8   transfer, stay or dismiss an action when a similar complaint has been filed in another district
9   court.  *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991); *Church of
10  Scientology of California v. United States Department of the Army*, 611 F.2d 738, 749 (9th Cir.
11  1980) (a district court has the discretion to "decline judgment on an issue which is properly before
12  another district," citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952)).
13  See also *Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269
14  (C.D.Cal 1998); *Ward v. Follett Corp.*, 158 F.R.D. 645,648 (N.D.Cal. 1994).  The comity
15  doctrine is intended to foster judicial economy and avoid conflicting judgments.  For this reason,
16  it should not be rigidly or mechanically applied.  Rather, it should be invoked as necessary to
17  ensure wise judicial administration.  *Church of Scientology*, *supra*, 611 F.2d at 749-50; *Pacesetter
18  Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

19         In evaluating whether to invoke the federal comity doctrine, the court must consider three
20  factors: the chronology of the case filings; the identity of the issues involved; and the identity of
21  the parties.  See *Alltrade*, *supra*, 946 F.2d at 625.  Even if all three factors support transfer, the
22  court may still exercise jurisdiction over the second-filed action if equitable considerations warrant
23  doing so.  In this regard, evidence of forum shopping, anticipatory filing, or bad faith is relevant.
24  See *Alltrade*, *supra*, 946 F.2d at 628; *Church of Scientology*, *supra*, 611 F.2d at 750; *Guthy-
25  Renker Fitness, supra*, 179 F.R.D. at 270.

26

27  _____

28       [19]*Id.*, ¶¶ 3-5.

                                          5

1  ## 1.   Chronology Of The Case Filings

2       The Georgia action was filed more than eighteen months before the present suit.  There

3  is thus no question that it is the first-filed action.  The fact that Northen was not added as a

4  defendant to that suit until after initiation of the present action does not necessitate a different

5  conclusion.  In *Kerotest*, *supra*, the seminal case recognizing the federal comity doctrine, a

6  patentee sued Acme Equipment Corporation for patent infringement in the Northern District of

7  Illinois.  Thereafter, Kerotest, which manufactured the allegedly infringing products sold by

8  Acme, filed an action in the District of Delaware, seeking a declaration that the patents were

9  invalid and that its products did not infringe.  *Kerotest*, *supra*, 342 U.S. at 181-22.  After the

10  second action was filed, the patentee moved to join Kerotest as a defendant in the Illinois action

11  and to stay the Delaware action.  The Delaware court stayed the action pending before it for

12  ninety days; while the stay was in effect, the Illinois court approved Kerotest's joinder as a

13  defendant in that action.  *Id.* at 182.  The Supreme Court affirmed the Third Circuit's ruling that

14  the parties' dispute should be litigated in Illinois despite the fact Kerotest was not added as a

15  defendant in that action until after the Delaware suit had been commenced.  *Id.* at 182-83.  In so

16  doing, it noted that "[w]ise judicial administration, giving regard to conservation of judicial

17  resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution

18  of such problems."  *Id.* at 183.

19       Here, the unity of interest between B&N and Northen is just as clear, if not clearer, than

20  the unity of interest between Acme and Kerotest.  Indeed, it appears that the FIL claim pleaded

21  in this action was asserted against Northen rather than B&N only because the district court in

22  Georgia previously dismissed the claim as against B&N.  Northen has now been added as a

23  defendant in the Georgia action, and all aspects of the parties' dispute can thus be resolved in a

24  single proceeding.  Such a result will foster judicial economy and avoid the possibility of

25  inconsistent rulings.  The chronology of the filings, therefore, clearly favors dismissal or transfer

26  of this action.

27  ## 2.   Identity Of The Issues

28       There is no question that the issues in this suit are identical to those being litigated in

Georgia. Both actions concern the fact that B&N, through Northen, allegedly made fraudulent misrepresentations to induce Western to into an agreement with it. While Western bases this action against Northen on a different legal theory than that which presently underlies its claims against B&N and Northen in the Georgia action, the misrepresentations pleaded are identical, and the relief sought is the same.[20] Indeed, the precise claim asserted by Western in this action was previously pled against B&N in Georgia and dismissed by the court.

Western does not dispute this. Rather, it opposes the present motion on the basis that the Georgia court did not consider whether the anti-waiver provision of the FIL invalidated the choice of law provision contained in the Agreement.[21] Reduced to its essence, Western's argument is that the Georgia court erred in enforcing the choice of law provision and dismissing its FIL claim against B&N. Western attempts to obfuscate this reality by asserting that the anti-waiver provision of the FIL was "not part of the lawsuit in Georgia."[22] This, however, is patently false. The court's order granting B&N's motion for judgment on the FIL claim reveals that Western argued the anti-waiver provision of the FIL in that case, and that the argument was rejected by the district court.[23] The filing of the present action is nothing more than blatant forum-shopping designed to place the FIL claim before a California court in the hopes that it will reach a different result.

Tacitly conceding this fact, Western makes no argument that the FIL claim pleaded against Northen in the present suit is different than that asserted against B&N in the Georgia action. This, of course, is the relevant inquiry in evaluating whether dismissal or transfer is proper under the federal comity doctrine. Indeed, because Western seeks a ruling from this court that would conflict with the ruling of the district court in Georgia, accepting jurisdiction in this case would contravene the underlying purpose of the comity doctrine. See *Church of Scientology, supra*, 611

---

[20]Compare Shields Decl., Ex. A at 5-10 with Complaint, ¶¶ 6-13 and Prayer.

[21]See Pl.'s Opp. at 6-13.

[22]*Id.* at 12:24-25.

[23]See Shields Decl., Ex. B at 4-5.

7

1     F.2d at 750 ("The doctrine is designed to avoid placing an unnecessary burden on the federal

2     judiciary, and to avoid the embarrassment of conflicting judgments"); *Guthy-Renker, supra*, 179

3     F.R.D. at 269 ("The goal is the avoidance of both an unnecessary burden on the federal judiciary

4     and of conflicting judgments"). If Western wishes to pursue its FIL claim, it should appeal the

5     district court's entry of judgment in B&N's favor on that claim at the conclusion of the Georgia

6     case. It should not file duplicative litigation in this district. Thus, the second factor favors

7     transfer or dismissal of the instant case.

8                 **3.    Identity Of The Parties**

9     Western and Northen are both parties to the suit in Georgia. While, as noted above,

10    Northen was added as a counterclaim defendant in Georgia after the instant action had been

11    commenced, he is currently a party to both suits. Moreover, the motion to add Northen to the

12    Georgia suit was filed in October 1998, ten months before Western commenced this action.

13    Northen is being sued in both districts for conduct undertaken in his capacity as a representative

14    of B&N, the plaintiff in the Georgia suit. Thus, even had he not been added as a party to that

15    litigation, the identity of interest between Northen and B&N would provide a sufficient basis upon

16    which to conclude that the third comity factor favors dismissal or transfer of the present action.

17    See *Church of Scientology, supra*, 611 F.2d at 749 ("courts are not bound by technicalities" in

18    considering issues involving the comity doctrine). See also *Ward, supra*, 158 F.R.D. at 648

19    (describing the three factors as "the chronology of the two actions, the *similarity* of the parties,

20    and the *similarity* of the issues" (emphasis added)).

21                 **4.    Equitable Considerations**

22    Western does not argue that the court should exercise jurisdiction in this case because

23    Northen is guilty of anticipatory filing, forum shopping or bad faith, and the record contains no

24    evidence of such conduct on his or B&N's part. The Georgia action was filed by B&N more than

25    eighteen months before this action was commenced, based on Western's alleged failure to perform

26    its obligations under the Agreement. B&N is a Georgia corporation, and the Agreement contains

27    a Georgia choice of law provision. These facts warrant a finding that B&N's selection of the

28    Georgia forum was in good faith. Indeed, the record suggests that it is Western, not B&N or

1   Northen, that is engaged in forum shopping and bad faith. Thus, the equities weigh strongly in
2   favor of dismissal or transfer of the present action.

3       **B.    The Present Action Should Be Transferred**

4           A district court has discretion to transfer, stay or dismiss an action when it concludes that
5   it should decline to exercise jurisdiction over a case pursuant to the federal comity doctrine.
6   *Alltrade*, *supra*, 946 F.2d at 623; *Guthy-Renker*, *supra*, 179 F.R.D. at 269. The question is
7   which of these options is most appropriately invoked in the present case. In *Alltrade*, the Ninth
8   Circuit held that the district court erred in dismissing rather than staying the second-filed action,
9   since it was uncertain whether the court in which the first action was pending had jurisdiction to
10  entertain the claims pleaded in the second. Until that issue was resolved through proceedings in
11  the first action, the court stated, stay rather than dismissal was the proper remedy.[24] *Alltrade*,
12  *supra*, 946 F.2d at 628-29.[25]

13          Northen argues that dismissal is the appropriate remedy here.[26]  He notes that time
14  restrictions necessitated that he file an answer before moving to transfer, and asserts that if the
15  action is transferred, he will have no opportunity to file a motion to dismiss the FIL claim as a
16  result. Northen overlooks the fact that he can file a motion for judgment on the pleadings (or a
17  motion for summary judgment), and bring the issue to the district court's attention in that way.
18  Moreover, while he contends that B&N should be required to file a motion to amend its
19  counterclaim against him in Georgia to add the FIL claim, transfer will avoid any statute of

20

21          [24]The court noted that if the first court determined it had jurisdiction, the second action
22  could then be dismissed or transferred. *Id.* at 629.

23          [25]A different result is justified where the second-filed suit is brought for purposes of
24  harassment. *Id.* at 629, n. 15 (citing *Asset Allocation & Management v. Western Employers Ins.
    Co.*, 892 F.2d 566, 571 (7th Cir. 1989)). Here, while various facts in the record suggest that this
25  action was the product of forum shopping of B&N's part, the court does not have sufficient
26  evidence before it to conclude that B&N acted in bad faith.

27          [26]Neither party argues that the action should be stayed. Since the Georgia ruling would
    in all probability have res judicata or collateral estoppel effect in this proceeding, there is no
28  reason to issue a stay.

1  limitations issues that might arise as a result of a dismissal here.  See *Alltrade*, *supra*, 946 F.2d
2  at 629.  Consequently, the court concludes that it is appropriate to transfer the action to the
3  Northern District of Georgia rather than dismiss it.  See, e.g., *California Security Co-op, Inc. v.*
4  *Multimedia Cablevision, Inc.*, 897 F.Supp. 316, 321 (E.D. Tex. 1995) (transferring action under
5  federal comity doctrine because dismissal would force plaintiff to refile its claims in the first
6  action and further delay proceedings); *Fat Possum Records, Ltd. v. Capricorn Records, Inc.*, 909
7  F.Supp. 442, 447 (N.D.Miss. 1995) (after finding that it was proper to defer to the first-filed
8  action under the federal comity doctrine, the court noted that it "s[aw] very little difference
9  between the . . . options" of stay, dismissal or transfer, and transferred the case at plaintiff's
10  request).

11

12                                   **III.  CONCLUSION**

13          For the foregoing reasons, the court declines to exercise jurisdiction over this case and
14  transfers the matter forthwith to the Northern District of Georgia.

15

16  DATED: March 28, 2000                         *Margaret M. Morrow*
17                                                 MARGARET M. MORROW
                                                   UNITED STATES DISTRICT JUDGE
18

19

20

21

22

23

24

25

26

27

28